IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GORDON L. GOUGLER, as Personal ) <br> Representative of the Estate of Linda J. ) <br> Gougler, Deceased, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SIRIUS PRODUCTS, INC., and ) <br> WAL-MART STORES, INC., ) <br> ) <br> Defendants. ) | **PUBLISH** <br><br><br><br><br><br> **CIVIL ACTION 03-0583-WS-M** |

**ORDER**

This matter is before the Court on defendants' Motion for Reconsideration of Order Partially Denying Summary Judgment (doc. 89). The Motion has been briefed and is ripe for disposition at this time.

**I.   Background.**

Linda J. Gougler ("Mrs. Gougler") died on June 20, 2002, shortly after using certain cleaning products to clean her bathroom floor. Her husband, Gordon L. Gougler, the personal representative of her estate, brought this action against defendants Sirius Products, Inc. and Wal-Mart Stores, Inc., alleging state-law claims under the Alabama Extended Manufacturers' Liability Doctrine ("AEMLD") and for negligent, wanton and wrongful failure to warn. At the heart of this lawsuit is plaintiff's contention that Mrs. Gougler's death was caused by inhalation of toxic fumes produced by a rust remover called "Zap! Professional Restorer" ("Zap!"), used in tandem with bleach or other cleaning products. Plaintiff maintained that Zap! was defective in the following two respects: (i) its label was inadequate to warn Mrs. Gougler of its hazardous properties, and (ii) the product was unreasonably dangerous regardless of its label, because it had been defectively designed such that its ordinary use resulted in emission of potentially fatal fumes. At the time of Mrs. Gougler's death, Zap! was

distributed by defendant Sirius and sold at retailers, including defendant Wal-Mart, where Mrs. Gougler was allegedly an avid shopper.

On March 17, 2005, the undersigned entered a 31-page Order (doc. 81) granting defendants' Motion for Summary Judgment in part, but also denying it in part. In particular, the Court found that all of plaintiff's claims predicated on a failure to warn or deficient labeling theory were preempted by the Federal Hazardous Substances Act, 15 U.S.C. §§ 1261 *et seq*. ("FHSA"). The Court also ruled that plaintiff's AEMLD claim was not preempted to the extent that it was grounded on a design defect theory relating to the types and concentrations of acids found in Zap!, the reactivity of those acids to other common household cleaners, the product's propensity to release deadly fumes and odors, and the masking of warning odors from those acids via a deceptively pleasant wintergreen aroma.

On April 15, 2005, defendants submitted a Motion to Reconsider (doc. 89) assigning error to the summary judgment Order in three respects: (i) the Order recognized a design defect dimension to the AEMLD claim even though plaintiff had proceeded exclusively on a failure to warn theory; (ii) the Order found that the AEMLD defective design claim was not preempted by the FHSA; and (iii) plaintiff failed to show substantial evidence that a safer, practical, alternative design for Zap! existed at relevant times.

## II.     Propriety of Reconsideration.

In the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly. *See United States v. Bailey*, 288 F. Supp.2d 1261, 1267 (M.D. Fla. 2003); *Pennsylvania Ins. Guar. Ass'n v. Trabosh*, 812 F. Supp. 522, 524 (E.D. Pa. 1992); *Spellman v. Haley*, 2004 WL 866837, *2 (M.D. Ala. Feb. 22, 2002) ("litigants should not use motions to reconsider as a knee-jerk reaction to an adverse ruling"). Indeed, as a general rule, "[a] motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." *Summit Medical Center of Alabama, Inc. v. Riley*, 284 F. Supp.2d 1350, 1355 (M.D. Ala. 2003). It is well established in this circuit that "[a]dditional facts and arguments that should have been raised in the first instance are not appropriate grounds for a motion for

reconsideration." *Rossi v. Troy State University*, 330 F. Supp.2d 1240, 1249 (M.D. Ala. 2002) (denying motion to reconsider where plaintiff failed to submit evidence in question prior to entry of order and failed to show good cause why he could not have done so).[1]  Furthermore, the Eleventh Circuit has declared that "a motion to reconsider should not be used by the parties to set forth new theories of law." *Mays v. U.S. Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997); *see also Russell Petroleum Corp. v. Environ Products, Inc.*, 333 F. Supp.2d 1228, 1234 (M.D. Ala. 2004) (relying on *Mays* to deny motion to reconsider where movant advanced several new arguments); *Coppage v. U.S. Postal Service*, 129 F. Supp.2d 1378, 1379-81 (M.D. Ga. 2001) (similar).

Notwithstanding these limitations, reconsideration is appropriate to correct manifest errors of law or fact.  *See* Rule 60(b), Fed.R.Civ.P.; *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) ("Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence."); *Summit Medical Center of Alabama, Inc. v. Riley*, 284 F. Supp.2d 1350, 1355 (M.D. Ala. 2003) ("A motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice.").  The grant or denial of a motion to reconsider is left to the discretion of the district court. *See Chapman v. AI Transport*, 229 F.3d 1012, 1023-24 (11th Cir. 2000).

Upon review of defendants' Motion, it is evident that they seek reconsideration based solely on newly-raised legal arguments relating to the viability of the design defect claim, which arguments could and should have been presented in their Rule 56 submissions.  All of these contentions were available previously.  Their only explanation for failure to articulate them in their original summary judgment filings is their mistaken belief that "Plaintiff's AEMLD claim was based exclusively on a failure to adequately warn theory." (Motion to Reconsider, at 2.)  This justification is unconvincing, given the prominent

---

[1] Likewise, motions to reconsider are not a platform to relitigate arguments previously considered and rejected.  *See Lazo v. Washington Mutual Bank*, 2001 WL 577029, *1 (9th Cir. May 29, 2001) (motion to reconsider is properly denied where movant merely reiterates meritless arguments); *American Marietta Corp. v. Essroc Cement Corp.*, 2003 WL 463493, *3 (6th Cir. Feb. 19, 2003) (similar).

indicia in plaintiff's pleadings, discovery responses and summary judgment briefs that his AEMLD claim was rooted in both failure to warn and defective design theories.  Therefore, it would be a proper exercise of judicial discretion to deny reconsideration outright on the basis that a motion to reconsider is generally not proper if it is brought for the sole purpose of interposing previously available legal theories.

Notwithstanding the foregoing, the Court finds that pragmatic considerations of efficiency and judicial economy militate in favor of addressing the merits of defendants' Motion to Reconsider.  The Motion rests primarily on the purely legal question of the scope of FHSA preemption.  No new factual forays are necessary to resolve that issue.  Moreover, although denial of reconsideration would be justified under the standard articulated above, such denial would merely postpone the inevitable.  In that event, the preemption defense would undoubtedly feature prominently in defendants' trial strategy, presumably in the form of a Rule 50 motion for judgment as a matter of law at the close of plaintiff's evidence.  Rather than unnecessarily prolonging the suspense as to the ultimate fate of the preemption question until trial, the Court deems it beneficial for all concerned to confront that legal issue now.  For that reason, the Court exercises its discretion in favor of **granting** defendants' Motion for Reconsideration, and will revisit the March 17 Order in light of the specific legal issues presented in the Motion.[2]

---

[2]     Plaintiff's brief (doc. 94) filed in opposition to the Motion to Reconsider is rendered difficult to follow by its penchant for multi-page single-spaced block quotations from statutes, case law and depositions, with little verbiage explaining the significance of these passages from plaintiff's perspective.  Nonetheless, it appears that much of plaintiff's opposition brief is devoted to constructing an argument that his now-dismissed failure to warn claims (deemed preempted as a matter of law in the Order dated March 17, 2005) are not actually subject to preemption pursuant to the Consumer Products Safety Act, 15 U.S.C. §§ 2051 *et seq.*, and that defendants have failed to comply with reporting requirements of that Act.  (Opposition Brief, at 1-13.)  But plaintiff has never moved for reconsideration of the March 17 Order.  Even if he had, authorities cited in that Order unquestionably establish that FHSA preemption is applicable to consumer products.  *See, e.g., Milanese v. Rust-Oleum Corp.*, 244 F.3d 104 (2nd Cir. 2001) (involving a can of primer that the plaintiff was spraying on his car); *Moss v. Parks Corp.*, 985 F.2d 736 (4th Cir. 1993) (concerning paint thinner that plaintiff was using to clean paint spills in a bedroom of his house).  As such, the consumer product distinction belatedly championed by Gougler is unavailing.  Further, although plaintiff spends more than five pages

**III.    Analysis upon Reconsideration.**

   *A.    Whether the Design Defect Claim was Properly Raised.*

Antecedent to addressing the preemption issue at the core of the Motion for Reconsideration, the parties spar as to whether the AEMLD "unreasonably dangerous" claim alleging a design defect is even part of this lawsuit. (Motion, at 2-3; Opposition Brief, at 13-14.)[3] Defendants are correct that plaintiff could have articulated this theory more concretely; nonetheless, plaintiff's discovery responses and the report of parties' planning meeting were unquestionably sufficient to put defendants on notice of the defective design angle to plaintiff's AEMLD claim.

Back on October 23, 2003, the parties submitted a Rule 26(f) Report of Parties' Planning Meeting (doc. 13). In that Report, plaintiff indicated that "[a]s a result of using [Zap!], Linda J. Gougler was exposed to toxic fumes from which she died on June 20, 2002 as a result of the product's defective or unreasonably dangerous condition." (Doc. 13, at 2.) Although the words "design defect" are not used, this statement fairly conveys plaintiff's position that the propensity to emit toxic fumes is Zap!'s defective or unreasonably dangerous condition. In that same document, defendants evinced their understanding that plaintiff was pursuing this theory. Specifically, defendants asserted that "the product at issue in this case was not in a defective or unreasonably dangerous condition when put to its intended use," and that "[t]he product *also* adequately warned about hazards associated with its use." (*Id.* at 3 (emphasis added).) The Rule 26(f) Report verifies defendants' understanding at the inception of this action that plaintiff's AEMLD claim incorporated allegations of a defective product and *also* a failure to adequately warn.

Likewise, in response to interrogatories requesting that he delineate the specific defect(s)

---

of his brief expounding on his position that defendants failed to satisfy the CPSA's reporting requirements, he fails to explain the significance of any such omission to the legal issues properly joined in this action. As plaintiff has not posited any cause of action against defendants for violation of such reporting requirements, it is unclear how those alleged violations are even relevant. For all of these reasons, the Court declines to reexamine its legal determination that his failure to warn claims are preempted.

   [3]    Indeed, defendants protest that they "have always believed that Plaintiff's AEMLD claim was based exclusively on a failure to adequately warn theory." (Motion, at 2.)

claimed, plaintiff stated that Mrs. Gougler's use of Zap! "resulted in the emission of toxic fumes and odors from which she died" and that use of Zap! in conjunction with bleach "would result in the emission of toxic and potentially fatal fumes and odors." (Plaintiff's Response to Interrogatory #11(a).)[4] Although plaintiff briefed the design defect issue in opposition to the Motion for Summary Judgment, defendants' reply brief did not object, but instead omitted discussion of that issue altogether. Had defendants been misled into believing that plaintiff was not asserting a design defect claim, surely they would have so indicated in their reply brief. Yet they chose not to do so.

Considering all of the foregoing, the Court readily concludes that plaintiff's AEMLD cause of action includes a defective design component, predicated on alleged toxic fumes emitted by Zap!, particularly when used on a surface also treated with bleach.[5] Accordingly, plaintiff will be allowed to pursue this claim in this action. To the extent that defendants object to the March 17 Order because it

---

[4] Defendants "concede" that plaintiff's interrogatory response states as indicated, but claim that other passages from that response "clarif[y] the allegation" by referencing inadequate warnings. (Motion, at 2.) This characterization amounts to wishful thinking. A reasonable reading of plaintiff's interrogatory response is that it highlights two separate defects: (1) a design defect resulting in emission of toxic, potentially fatal fumes; and (2) an inadequate warning label. In any event, that response, coupled with the Rule 26(f) Report, was sufficient to place defendants on notice that plaintiff might be claiming a design defect. It was therefore incumbent on defendants to utilize the various implements in their discovery toolkit to lock in that allegation, instead of turning a blind eye in hopes that plaintiff did not really mean what he said.

[5] In the Joint Proposed Pretrial Order (doc. 93), defendants state that "[t]he Court has defined the Plaintiff's remaining claim as whether 'ZAP! was unreasonably dangerous and unfit for household use, irrespective of its product label, because of the nature, strength and chemical properties of its ingredients.'" (Doc. 93, at 2.) It is the plaintiff's definition of this claim, and not the Court's, that determines the scope of the AEMLD claim. A fair reading of plaintiff's Rule 26(f) and discovery-related submissions is that the design defect claim alleges that Zap! was defectively designed because of its propensity to emit toxic and potentially fatal fumes and odors, particularly when used in conjunction with bleach or other cleaning products. Plaintiff may utilize any admissible evidence at its disposal relating to such an alleged defect including, for example, evidence regarding the nature and concentration of acids in the product; the reactivity of those acids to bleach-based products; and the alleged concealment of those toxic fumes by a pleasant wintergreen fragrance to lull the end user into not recognizing the highly corrosive, strong, concentrated acids found in Zap!. Contrary to defendants' suggestion at footnote 2 of their Motion, all of this evidence appears linked to the design defect theory outlined by plaintiff in discovery.

recognized the existence of a design defect claim, their objections are **overruled**.[6]

### B.      *Whether the Design Defect Claim is Preempted by FHSA.*

Defendants' principal ground for seeking reconsideration is that, even if it is classified as a design defect claim rather than a failure to warn claim, plaintiff's AEMLD claim is preempted. This question of pure law turns on the scope of the preemption provision of the FHSA. By its terms, that preemption clause bars claims through which plaintiffs seek to impose different or greater warning requirements on a product than those established by the FHSA. Plaintiff's design defect claim does not critique or find fault with the adequacy of Zap!'s warning label. But defendants' affirmative defenses unquestionably invoke that label as a basis for averting liability. Thus, the central question is whether the existence of affirmative defenses implicating a product's warning label can sweep AEMLD design defect claims unrelated to that label within the ambit of FHSA preemption.

### 1.      *Legal Presumptions for Preemption Analysis.*[7]

In considering questions of federal preemption of state law, courts adhere to two critical presumptions. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). First, there is "the assumption that the historic police powers of the States [are] not to be

---

[6] Defendants' analogy to *Torres-Rios v. LPS Laboratories, Inc.*, 152 F.3d 11 (1st Cir. 1998), is not compelling. In *Torres-Rios*, the court jettisoned a design defect claim relating to a cleaning product where "[a]t no time from the filing of the original complaint through the pretrial order did plaintiffs invoke language that signals a design defect claim." *Id.* at 16. Here, by contrast, plaintiff has repeatedly signaled a design defect from the outset of this lawsuit, but defendants disregarded those signals until after being denied summary judgment.

[7] The preemption discussed herein is so-called "ordinary preemption," as distinguished from "complete preemption." The latter doctrine is used to establish federal subject matter jurisdiction, while the former is merely a defense to the application of state law. *See generally Smith v. GTE Corp.*, 236 F.3d 1292, 1313 (11th Cir. 2001) ("complete preemption functions as a narrowly drawn means of assessing federal removal jurisdiction, while ordinary preemption operates to dismiss state claims on the merits and may be invoked in either federal or state court"); *U.S. Aviation Underwriters, Inc. v. Yellow Freight System, Inc.*, 296 F. Supp.2d 1322, 1337 (S.D. Ala. 2003) (explaining that complete preemption doctrine is narrow, applying only when preemptive force of a statute is so extraordinary that it converts ordinary state common-law complaint into one stating a federal claim). No party has suggested that FHSA completely "preempts the field."

superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947).  Second, courts deciding preemption issues must be mindful that the scope of a statute's preemption provision rests primarily on a fair understanding of congressional purpose, inasmuch as "[t]he purpose of Congress is the ultimate touchstone of pre-emption analysis." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 515, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (citation omitted).  These presumptions, considered together, render it clear that where Congress has provided an express preemption clause, courts must construe it narrowly to effectuate the congressional purpose, especially if the harm alleged relates to areas traditionally within states' remedial purview.  *See Cipollone*, 505 U.S. at 518; *see also Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1256 (11th Cir. 2003) ("in cases where the harm alleged is of a type that traditionally has been within the remedial province of the states, ... express preemption clauses must be construed narrowly"); *Hughes v. Southern States Co-op, Inc.*, 180 F. Supp.2d 1295, 1299 (M.D. Ala. 2001) (preemption statutes should be construed narrowly, and should focus on manner in which Congress intended statute to affect business, consumers and the law); *Higgins v. Monsanto Co.*, 862 F. Supp. 751, 756 (N.D.N.Y. 1994) (observing that the Supreme Court "shows great reluctance in finding preemption absent clear congressional intent"); *Wright v. Dow Chemical U.S.A.*, 845 F. Supp. 503, 508 (M.D. Tenn. 1993) ("When Congress provides a preemption clause, the presumption against preemption mandates courts to read such a clause narrowly.").

        2.     *The FHSA Preemption Clause.*

The FHSA's preemption clause provides that "no state ... may establish or continue in effect a cautionary labeling requirement applicable to such substance or packaging ... unless such cautionary labeling requirement is identical to the labeling requirement under" the Act.  15 U.S.C. § 1261 note (b)(1)(A).  Federal appellate courts have explained that this provision preempts "any state cause of action that seeks to impose a labeling requirement different from the requirements in the FHSA or the regulations promulgated thereunder."  *Mattis v. Carlon Elec. Products*, 295 F.3d 856, 862 (8th Cir. 2002); *see also Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 109 (2d Cir. 2001); *Moss v. Parks*

*Corp.*, 985 F.2d 736, 740 (4th Cir. 1993).  Simply put, "all claims premised upon labels different from those required by the FHSA are preempted by federal law."  *Pennsylvania General Ins. Co. v. Landis*, 96 F. Supp.2d 408, 415 (D.N.J. 2000).

        3.      *The FIFRA Analogy.*

Analysis of the FHSA's preemption clause is hampered by the paucity of published authority construing that provision.  For that reason, in interpreting the breadth of FHSA preemption, both parties turn to the extensive body of caselaw applying a parallel preemption provision under the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. §§ 136 *et seq.* ("FIFRA").[8]  FIFRA's preemption clause provides that no state shall "impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter."  7 U.S.C. § 136v(b).  The Court shares the parties' assessment that the FIFRA preemption language is quite similar to that of FHSA, and that cases interpreting that clause may shed substantial light on the meaning and effect of the analogous FHSA provision.  *See, e.g., Comeaux v. National Tea Co.*, 81 F.3d 42, 44 (5th Cir. 1996) (characterizing the FHSA preemption clause as "almost identical" to that of FIFRA); *National Bank of Commerce of El Dorado v. Kimberly-Clark Corp.*, 38 F.3d 988, 993 (8th Cir. 1994) (agreeing with other circuits that FHSA preemption language is essentially identical to that of FIFRA); *Moss*, 985 F.2d at 741 n.3 ("[t]he preemption issues arising under FHSA are identical to those arising under FIFRA") (quoting *Chemical Specialties Mfg. Ass'n, Inc. v. Allenby*, 958 F.2d 941, 945 (9th Cir. 1992)).

Notwithstanding its express preemption provision, FIFRA does not preempt all state law claims.  To be sure, it has been held to preempt state law claims that are "*premised* on inadequate labeling or a failure to warn."  *National Bank of Commerce of El Dorado, Arkansas v. Dow Chemical Co.*, 165 F.3d 602, 608 (8th Cir. 1999) (citing authorities for proposition that FIFRA preempts only state law tort claims *based* on failure to warn); *see also Papas v. Upjohn Co.*, 985

---

[8]      In that regard, the analytical bedrock of defendants' brief is comprised of its discussion of FIFRA authorities, including most notably *Pitts v. Dow Chemical Co.*, 859 F. Supp. 543 (M.D. Ala. 1994), which defendants urge this Court to follow.  (Motion, at 5-7.)  Thus, defendants rely heavily on the FIFRA analogy in pressing their request for reconsideration.

F.2d 516, 518 (11th Cir. 1993) (explaining that FIFRA preempts state law claims only "[t]o the extent that state law actions for damages depend upon a showing that a pesticide manufacturer's 'labeling or packaging' failed to meet a standard 'in addition to or different from' FIFRA requirements"); *Worm v. American Cyanamid Co.*, 5 F.3d 744, 747 (4th Cir. 1993) (FIFRA preemption applies to any state law claim "that rests on an alleged failure to warn or communicate information about a product through its labeling"); *Jack v. Orkin Exterminating Co.*, 2001 WL 25641, *2 (E.D.N.Y. Jan. 5, 2001) ("[W]here a cause of action requires proof that a product's packaging and labeling should have included additional, different or more clearly stated warnings than those required by FIFRA, it is preempted by FIFRA provisions."); *Helms v. Sporicidin Int'l*, 871 F. Supp. 837, 842 (E.D.N.C. 1994) (explaining that FIFRA preempts only state law claims that rest on failure to warn or improper labeling theories); *Herr v. Carolina Log Bldgs., Inc.*, 771 F. Supp. 958, 961 (S.D. Ind. 1989) ("under FIFRA, the jury may not determine that a deficiency in the label, in and of itself, requires a finding of liability for the plaintiffs' damages"). By contrast, claims that do not challenge product labels or warnings are not preempted. *See Johnson v. Monsanto Chemical Co.*, 129 F. Supp.2d 189, 196 (N.D.N.Y. 2001) (strict liability claims based on design defect, not improper labeling, are not preempted because they do not "require a finding that Defendants' labeling or warnings were deficient"); *Burt v. Fumigation Service and Supply, Inc.*, 926 F. Supp. 624, 630 (W.D. Mich. 1996) ("But claims unrelated to labelling, such as those founded on the testing, manufacturing or formulating of the pesticide, are not pre-empted."); *Higgins*, 862 F. Supp. at 757 ("claims that do not challenge the labeling of the defendant's product are not preempted"). Simply put, "[i]f a plaintiff can establish a violation of FIFRA which is not predicated on failure to warn or inadequate labeling that claim is actionable." *Id.* at 758.

Thus, in the FIFRA context, federal courts routinely distinguish between state-law claims based on failure to warn (which are preempted) and those based on design defects or manufacturing flaws (which are not). *See Papas*, 985 F.2d at 520 (claims that do not challenge labeling and packaging practices are not preempted under FIFRA, whereas claims requiring a showing that label caused plaintiff's injury are preempted); *Worm*, 5 F.3d at 747 (differentiating labeling claims from defective

-10-

product claims for FIFRA preemption purposes); *Kennan v. Dow Chemical Co.*, 717 F. Supp. 799, 811-12 (M.D. Fla. 1989) (granting summary judgment on preemption grounds to the extent products liability claims were based on failure to warn, but denying summary judgment to the extent that claims were otherwise based on defectiveness of product on theories of defective design or manufacturing flaw). In creating this dichotomy, courts have declared that "defectively manufactured or designed products properly labeled under FIFRA may still be subject to state regulation," and that claims based on inadequate manufacturing or inappropriate design are therefore not preempted. *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 609 (8th Cir. 1999); *see also Reutzel v. Spartan Chemical Co.*, 903 F. Supp. 1272, 1281-82 (N.D. Iowa 1995) ("Because the Reutzels' remaining claim for strict liability is based on theories of defective design and manufacture and not on a theory of inadequate labeling, it is not preempted by FIFRA."); *Wright*, 845 F. Supp. at 511 (explaining that FIFRA does not contemplate preclusion of non-labeling claims, and therefore does not preempt plaintiffs' claims for defective design and failure properly to test and study pesticides); *Fisher v. Chevron Chemical Co.*, 716 F. Supp. 1283, 1289 (W.D. Mo. 1989) (strict liability claims that herbicide spray was unreasonably dangerous when put to its reasonably anticipated use were not preempted by FIFRA); *Herr*, 771 F. Supp. at 960-62 (claims that chemicals, wood preservative, and treated building materials were improperly designed and unreasonably dangerous for intended use were not preempted by FIFRA, unlike claims predicated on inadequate labeling and failure to warn); *Arnold v. Dow Chemical Co.*, 91 Cal.App.4th 698, 716-17 (Cal.App. 2 Dist. 2001) (no preemption where plaintiffs do not fault warning labels or allege that different labels should have been used, but instead allege that product did not perform as safely as an ordinary consumer would expect, such that complaint concerns matters "outside the label").[9]

Although extensive and persuasive, this authority was not unanimous. In particular, a

---

[9] Although defective design claims are generally held not to be preempted under FIFRA, a plaintiff cannot avert FIFRA's preemptive effect simply by concealing a failure to warn claim in defective design garb. *See Grenier v. Vermont Log Bldgs., Inc.*, 96 F.3d 559, 564 (1st Cir. 1996) ("merely to *call* something a design or manufacturing defect claim does not automatically avoid FIFRA's explicit preemption clause" if claim is merely a disguised attack on a failure to warn).

countervailing line of precedents developed under which courts held strict liability claims to be preempted if they might involve consideration of the warning label in some way, or if the manufacturer might be induced to alter the label by an unfavorable verdict. Many of these authorities are cited in defendants' Motion. *See, e.g., Dow Agrosciences LLC v. Bates*, 332 F.3d 323, 332 (5th Cir. 2003) (deeming defective design claim to be preempted by FIFRA because success would induce manufacturer to alter product label); *Oken v. Monsanto Co.*, 218 F. Supp.2d 1361, 1366-67 (S.D. Fla. 2002) (design defect claim held preempted because analysis "necessarily involves consideration of the warning given to the public").

Three weeks ago, however, the U.S. Supreme Court weighed in definitively on the reach and scope of FIFRA preemption in *Bates v. Dow Agrosciences LLC*, 125 S.Ct. 1788 (2005).[10] Recognizing that federal and state courts were splintered as to whether and how FIFRA preemption extends to non-labeling claims (including strict liability claims predicated on defective design theories), the Supreme Court granted certiorari. Justice Stevens, writing for the majority, first observed that the court below was "quite wrong" in construing the term "labeling requirement," as set forth in FIFRA's preemption provision, as extending to "any event, such as a jury verdict, that might 'induce' a pesticide manufacturer to change its label," but recognized that "common-law duties" lay within the scope of such requirements. *Bates*, 125 S.Ct. at 1798.[11] In light of the clear statutory directive that state rules are

---

[10] *Bates* postdates both parties' briefs regarding the Motion for Reconsideration. Neither party has brought *Bates* to the Court's attention by means of a Notice of Supplemental Authority or the like. Nor did either party's brief identify the pendency of this highly relevant Supreme Court case, even though defendants cited to and relied on the appeals court's decision in that very case. Nonetheless, given *Bates*' obvious significance to the legal issues presented, the Court will consider and apply that decision here.

[11] In this regard, the Supreme Court roundly denounced effects-based analyses utilized by various lower courts, under which claims were deemed preempted if their successful prosecution might encourage the manufacturer to alter its label. Emphasizing that FIFRA's preemption clause was written in terms of "requirements," the *Bates* Court explained that "[a] requirement is a rule of law that must be obeyed; an event, such as a jury verdict, that merely motivates an optional decision is not a requirement. The proper inquiry calls for an examination of the elements of the common-law duty at issue ...; it does not call for speculation as to whether a jury verdict will prompt the manufacturer to take any particular action (a question, in any event, that will depend on a variety of cost/benefit

not preempted by FIFRA unless they are labeling or packaging requirements, the *Bates* Court reversed the Fifth Circuit, reaching a common-sense holding as follows:

> "Rules that require manufacturers to design reasonably safe products, to use due care in conducting appropriate testing of their products, to market products free of manufacturing defects, and to honor their express warranties or other contractual commitments plainly do not qualify as requirements for 'labeling or packaging.' None of these common-law rules requires that manufacturers label or package their products in any particular way. Thus, petitioners' claims for defective design, defective manufacture, negligent testing, and breach of express warranty are not pre-empted."

*Id.* at 1798.

In the final analysis, then, *Bates* makes plain that FIFRA "pre-empts any statutory or common-law rule that would impose a labeling requirement that diverges from those set out in FIFRA and its implementing regulations. It does not, however, pre-empt any state rules that are fully consistent with federal requirements." *Id.* at 1803.[12]

### 4. Application to Plaintiff's AEMLD Claim.

Gougler's remaining AEMLD claim against Sirius and Wal-Mart alleges that Zap! was defectively designed because it contained high concentrations of strong acids (including sulfuric and muriatic acids) that rendered the product unreasonably dangerous because of its propensity to emit toxic and potentially deadly fumes and odors, especially if used on surfaces treated with other household cleaners. In this claim, plaintiff does not seek to impose any additional or different labeling requirements on Zap!'s manufacturers. He does not rely on any Alabama rule requiring a manufacturer to label or package its products in any particular way. To prevail on his AEMLD cause of action, Gougler need not prove, and apparently does not intend to prove, any defects or inadequacies in Zap!'s warning label. His AEMLD claim has nothing to do with the sufficiency of the label. Rather, he simply seeks to avail himself of an Alabama rule that requires manufacturers to design reasonably safe

---

calculations best left to the manufacturer's accountants)." 125 S.Ct. at 1799.

[12] On its face, the *Bates* ruling appears to undermine, if not obliterate, the analysis animating much of the FIFRA authority cited in defendants' Motion for Reconsideration, including specifically the notion that any claims not based on a warning label are automatically preempted if they might involve consideration of that label in some inchoate, ill-defined way.

products.[13]  Under the Supreme Court's holding in *Bates*, such a rule clearly does not qualify as a "labeling requirement" under the FHSA; therefore, Gougler's defective design claim falls beyond the ambit of FHSA's preemption provision.

Notwithstanding the foregoing, defendants insist that FHSA preemption bars Gougler's AEMLD claim.  According to defendants, the adequacy of the warning label on the Zap! bottle is necessarily at issue because they have interposed affirmative defenses of contributory negligence, assumption of risk and product misuse.  All of these defenses, as posited by defendants, appear to turn on the adequacy of the label, in showing that Mrs. Gougler had a conscious appreciation of the dangers involved in using Zap! or that she used the product in an unintended and unforeseeable manner by failing to abide by an adequate warning.  *See generally Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1193-94 (11th Cir. 2004) (explaining that product is unreasonably dangerous for AEMLD purposes if it fails to meet reasonable safety expectations of ordinary consumer, but that danger may be obviated by an adequate warning).  Because their affirmative defenses rest on the adequacy of the label, defendants argue, the defective design claim to which those defenses apply must be preempted.  In support of their position, defendants cite *Pitts v. Dow Chemical Co.*, 859 F. Supp. 543 (M.D. Ala. 1994), a FIFRA case holding that even if a state-law claim does not rest on a failure to warn theory, that claim is nonetheless preempted if the defendant interposes affirmative defenses tied to the adequacy of the warning.  *Id.* at 551-52.[14]

---

[13]  Of course, as part of his proof that Zap! is defective and unreasonably dangerous, Gougler will have to show that "the product fails to meet the reasonable safety expectations of an 'ordinary consumer,' that is, an objective 'ordinary consumer,' possessed of the ordinary knowledge common to the community."  *Tillman v. R.J. Reynolds Tobacco Co.*, 871 So.2d 28, 32 (Ala. 2003). In doing so, however, he will not have to prove that the warning label falls short of some Alabama common-law labeling requirement; rather, it is incumbent on defendants to offer proof about the virtues of that warning label in order to promote their affirmative defenses.  *Id.* at 34.

[14]  *Pitts* appears to be the only published federal decision deeming the existence of a warning-related affirmative defense sufficient to trigger FIFRA preemption, even though the underlying claim is unrelated to that warning.  Several other district court decisions have either suggested a different outcome, or declined to reach the issue.  *See Higgins*, 862 F. Supp. at 759 (rejecting defendants' contention that defective design claims unrelated to warning label should be preempted

The Court finds that plaintiff's AEMLD design claim does not require the plaintiff to make any affirmative showing that Zap!'s warning label was flawed. Plaintiff can prevail on his AEMLD claim at trial without a jury finding condemning the product's label under some Alabama state metric. The Court further finds, and plaintiff does not dispute, that defendants' affirmative defenses to the AEMLD defective design claim will require them to make certain showings regarding the Zap! warning label. (*See* March 17 Order, at 25-28.)  Thus, in order for defendants' affirmative defenses to succeed, they will have to convince a jury that any dangerous condition in Zap!'s design or formulation is "obviated by an adequate warning." *Tillman v. R.J. Reynolds Tobacco Co.*, 871 So.2d 28, 34 (Ala. 2003).

The Court cannot agree that defendants' injection of the adequacy of the warning label via its affirmative defenses automatically triggers FHSA preemption of plaintiff's entire AEMLD claim.  Three compelling reasons counsel against a finding of preemption on that basis.  First, the Court is reminded that express preemption clauses must be construed narrowly, particularly where (as here) the harm alleged is of a type that traditionally lies with the states' remedial province.  *See, e.g., Cipollone*, 505 U.S. at 518; *Branche*, 342 F.3d at 1256.  To hold that an affirmative defense triggers FHSA preemption would be to confer an expansive construction to the term "cautionary labeling requirement" from the applicable preemption clause, in direct conflict with the stringent interpretation required by law.  Second, the Supreme Court's decision in *Bates* makes clear that defective design claims are not preempted under FHSA, as a matter of law, because state rules requiring manufacturers to design reasonably safe products plainly do not qualify as "cautionary labeling requirements."  Defendants may not subvert the tightly circumscribed construction to be afforded preemption clauses or the rationale of

---

under FIFRA because they might still require a showing of the warning's adequacy); *Kennan*, 717 F. Supp. at 812 (acknowledging that affirmative defenses in defective design case require defendants to demonstrate adequacy of warnings, conceding that such a defense might give rise to preemption, but stating no view as to whether preemption attaches); *Arkansas-Platte & Gulf Partnership v. Dow Chemical Co.*, 886 F. Supp. 762, 767 (D. Colo. 1995) (waving aside as premature or inapplicable defendant's contention that design defect claim was preempted because of inevitable defense that product was adequately labeled).  As such, the *Pitts* decision appears isolated, and there is precious little authority supporting defendants' position as to the legal impact of their affirmative defenses on the FHSA preemption analysis, particularly in light of *Bates*.

*Bates* simply by invoking affirmative defenses that implicate the adequacy of their warnings; otherwise, *Bates* would be rendered meaningless because defendants could easily circumvent its limitations through artful and creative pleading of affirmative defenses.[15]  Third, it would defy logic and common sense for an affirmative defense to constitute a state-imposed "cautionary labeling requirement" for FHSA preemption purposes.  Far from imposing "requirements" on a manufacturer, the contributory negligence, assumption of risk and product misuse defenses provided under Alabama common law afford a potential escape hatch from liability.  It would therefore be a gross mischaracterization to cast such affirmative defenses as "cautionary labeling requirements" within the meaning of the FHSA's preemption clause simply because they contemplate some review of a warning label by a factfinder.

       Although defendants contend that the *Pitts* decision from the Middle District of Alabama favors a preemption finding here, their reliance is misplaced.  *Pitts* states that the assumption of risk defense, by requiring jury review of the warning label, mandates preemption of design defect claims unrelated to the warning label.  859 F. Supp. at 551-52.  But the *Pitts* court did not have the benefit of the Supreme Court's reasoning in *Bates*.  Furthermore, *Pitts* rests on an unduly broad reading of the Eleventh Circuit's decision in *Papas*, wherein the court explained that FIFRA preemption applies to the extent that state law claims "require a showing that [defendant]'s labeling and packaging caused the alleged injury."  985 F.2d at 520.  The *Papas* court also held that "[c]laims that do not challenge [defendant]'s labeling and packaging practices are not pre-empted."  *Id.*  The *Pitts* plaintiff's claim clearly did not challenge the defendant's labeling or packaging practices, nor did it require a showing that such practices caused plaintiff's injuries.  Thus, under a straightforward reading of *Papas*, the *Pitts* plaintiff's AEMLD claim would not have been preempted.

       Nonetheless, in applying *Papas*, *Pitts* construed affirmative defenses as transforming the plaintiff's AEMLD claim into one challenging the defendant's labeling and packaging practices.  The

---

[15]  Such a scenario, in which plaintiffs' efforts to bring state-law damages claims of any stripe would be stymied by mere creative pleading of warning-related defenses by defendants, would run counter to the Supreme Court's observation that "there is no general, inherent conflict between federal pre-emption of state warning requirements and the continued vitality of state common law damages actions."  *Cipollone*, 505 U.S. at 518.

plaintiff in *Pitts* did not have to make any showing regarding the product label, and did not have to prove that the label was inadequate, in order to prevail on that AEMLD cause of action. Rather, the warning label was relevant only insofar as the *Pitts* defendant invoked it to establish an affirmative defense. In finding that the affirmative defense by itself transfigured a non-labeling claim into a labeling claim, the *Pitts* court thus took unwarranted liberties with *Papas* and interpreted the FHSA preemption provision in a far more sweeping manner than is permitted under *Bates*, *Cipollone* and other applicable authorities. *See, e.g., Higgins*, 862 F. Supp. at 758 (recognizing that "*Papas II* should not be read broadly"). The Court therefore declines to adopt the holding in *Pitts* here.

In sum, this is not a case in which a plaintiff predicates his claims for relief on an allegation that the product's warning label should have contained additional or different information than it did. To the contrary, plaintiff's remaining AEMLD cause of action does not take aim at the label at all, much less seek to impose some higher or different state law "cautionary labeling requirement" than is required by the FHSA. As confirmed by the Joint Proposed Pretrial Order, the elements of that AEMLD claim do not oblige Gougler to prove that the product label was deficient. Rather, this is a case in which defendants attempt to wield the warning label as a shield from liability. That effort cannot be reasonably construed as implicating an Alabama common law "cautionary labeling requirement" more onerous or different than FHSA, for the simple reason that it is not a "requirement" at all. The Court finds that the express language of FHSA's preemption provision, as well as binding judicial exhortations against construing such provisions broadly, cannot be reconciled with the preemption relief sought by defendants. Accordingly, defendants' objections that the AEMLD design defect claim should be deemed preempted under the FHSA are **overruled**.[16]

---

[16] As a backup argument, defendants maintain that the Court should grant them summary judgment because the warnings on the Zap! bottle were adequate as a matter of law to obviate any "unreasonably dangerous" attributes the product might have had. (Motion, at 7-10.) As the Court pointed out in its original summary judgment Order, however, "a jury will normally determine the dangerousness of a product." *Tillman*, 871 So.2d at 32; *see also Deere & Co. v. Grose*, 586 So.2d 196, 199 (Ala. 1991) (declaring that evidence did not support holding as a matter of law that warning obviated danger of the product, and that trial court therefore did not err in submitting issue to jury). Defendants have presented no persuasive argument that the Court can or should depart from that

### C.     *Whether Plaintiff Has Shown a Safer, Practical, Alternative Design.*

As a final basis for seeking reconsideration, defendants maintain that there is insufficient evidence of a safer, practical alternative design for Zap!. (Motion, at 11-14.)[17]  Certainly, there is abundant Alabama authority that a plaintiff bringing an AEMLD design defect cause of action "must prove that a safer, practical, alternative design was available to the manufacturer at the time it manufactured the product." *General Motors Corp. v. Jernigan*, 883 So.2d 646, 662 (Ala. 2003) (citing *Hannah v. Gregg, Bland & Berry, Inc.*, 840 So.2d 839, 858 (Ala. 2002)); *Bagley v. Mazda Motor Corp.*, 864 So.2d 301, 312 (Ala. 2003) (same); *Connally v. Sears, Roebuck & Co.*, 86 F. Supp.2d 1133, 1137 (S.D. Ala. 1999) (same). "The requirement for proving that a safer, practical, alternative design was available is evidence indicating (1) that the plaintiff's injuries would not have

---

general rule by deeming Zap!'s warning label sufficient <u>as a matter of law</u> to obviate and eradicate any unreasonably dangerous properties the product had. More importantly, as discussed in the summary judgment Order, there are genuine issues of fact as to the adequacy of the label for purposes of defendants' "obviated" defense, such as its use of the potentially vague term "mix" and the absence of any warning directed specifically to persons with respiratory problems. Plaintiff's evidence will apparently be that Mrs. Gougler used the product in conformity with the label, but was killed by the toxic fumes it released, such that the label was not adequate to obviate Zap!'s dangerous character. Thus, the Zap! warning label contained sufficient ambiguities, and there are sufficient factual questions, that the Court cannot hold as a matter of law that the label obviated whatever unreasonably dangerous properties the product had. (*See* March 17 Order, at 19-20, 26-28.)

[17]      In advancing this argument, defendants take this Court to task for relying on *Tillman v. R.J. Reynolds Tobacco Co.*, 871 So.2d 28 (Ala. 2003) and *Jordan v. General Motors Corp.*, 581 So.2d 835 (Ala. 1991) for the proposition that to show a product is defective, a plaintiff must demonstrate its failure to meet the reasonable safety expectations of an ordinary consumer. (March 17 Order, at 19.) Defendants insist that *Tillman* is "inapposite" and that *Jordan* is "distinguishable," yet they do not offer any authority that the *Tillman* / *Jordan* standard cited by this Court is incorrect for design defect claims such as those presented here. Even more perplexing, defendants' section of the Joint Proposed Pretrial Order (doc. 93) cites *Tillman* for precisely the same principle for which defendants chastise the Court for relying on it. (Doc. 93, at 6.) It is therefore unclear how or why defendants claim the Court's citations to *Tillman* and *Jordan* were erroneous. In any event, the Court remains of the opinion that those authorities articulate the proper burden of proof on a plaintiff in a defective design case under the AEMLD. The "safer, practical, alternative design" burden is supplemental to the "reasonable safety expectations" burden, but neither *Tillman* nor *Jordan* is in conflict with that principle.

occurred or would have been less severe, and (2) that the usefulness of the alternative design outweighed the usefulness of the design used." *Jernigan*, 883 So.2d at 669.

As the Court observed in the March 17 Order, plaintiff's expert, Dr. Lipsey, testified that the sulfuric and hydrochloric acids contained in Zap! render the product "insidiously hazardous because it contains ingredients that are highly corrosive to human lungs" and in high concentrations, at that. (Lipsey Dep., at 110-12.)  Furthermore, defendants' own expert readily acknowledged that Zap! is unique among household rust removers in that it contains sulfuric and hydrochloric acids. (Barnhill Dep., at 23-24.)  Dr. Barnhill also testified that sulfuric acid is a "strong mineral acid" that tends to be "highly corrosive," while citric acid is a "weaker acid" commonly used in home cleaning products. (*Id.* at 22-23.)  The Court believes that this evidence is sufficient to preclude a summary judgment determination that, as a matter of law, plaintiff cannot show that a safer, practical alternative design was available tat the time the Zap! product in question was manufactured.  Of course, further exploration of this evidence at trial will be necessary to assess plaintiff's ultimate ability to meet the "safer, practical, alternative design" threshold.

### IV.   Conclusion.

Defendants' Motion for Reconsideration (doc. 89) is **granted** for prudential reasons, notwithstanding the fact that all of the legal arguments set forth therein could and should have been presented in the context of defendants' original Rule 56 submission.  Upon reconsideration, however, the Court **overrules** defendants' objections and **reaffirms** the March 17 Order.

DONE and ORDERED this 20th day of May, 2005.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE